WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Don't Waste Arizona Incorporated,

    Plaintiff,

v.

Hickman's Egg Ranch Incorporated,

    Defendant.

No. CV-16-03319-PHX-GMS

**ORDER**

Pending before the Court is Plaintiff Don't Waste Arizona's Motion for Partial Summary Judgment. (Doc. 60). For the reasons below, the Court denies the motion.

**BACKGROUND**

Plaintiff Don't Waste Arizona Inc. ("DWA") is an environmental non-profit with members who live near Defendant Hickman's Egg Ranch Inc. facilities. (Doc. 1). Defendant Hickman's Egg Ranch Inc. operates two large facilities that produce chicken eggs. Each of the facilities has millions of chickens which produce ammonia in their manure every day. (Doc. 61, Exhs. 2–3). DWA brought this suit against Hickman's based on Hickman's failure to report ammonia emissions in violation of the Emergency Planning and Community Right-to-Know Act. 42 U.S.C. §§ 11001–11050.

Few material facts are contested in the initial motion. One of Hickman's experts estimates that the Arlington facility emits 1,599 pounds of ammonia from chicken manure per day, and the Tonopah facility emits 1,896 pounds of ammonia per day. (Doc. 61, Exh. 4). Hickman's does not contest that 42 U.S.C. § 11004 requires facilities to

immediately report ammonia emissions in excess of 100 lbs per day to the appropriate authorities. And, Defendant Hickman's Egg Ranch "does not dispute that the ammonia emissions released at its Tonopah and Arlington facilities may have exceeded the general 100 lbs/day EPCRA emissions threshold for the periods noted by Plaintiffs . . . ." (Doc. 63 ¶ 7). Nevertheless, Hickman's notes that the reporting obligation "does not apply to any release which results in exposure to persons solely within the site or sites on which the facility is located." 42 U.S.C. § 11004(a)(4).

DWA's initial Motion for Partial Summary Judgment thus presents only one basic issue: whether Hickman's has raised an issue of fact as to whether the ammonia that is produced by the chickens results in exposure to persons "solely within the site or sites on which the facility is located."[1]

## DISCUSSION

### I. Legal Standard

The Court grants summary judgment when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court views the evidence "in a light most favorable to the non-moving party." *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that

---

[1] After the initial motion was filed, both Defendant and Plaintiff put forth supplemental authority that raises different issues, such as whether Hickman's qualifies for a statutory exception for "routine agricultural operations." 42 U.S.C. § 11021(e)(5). However, the Statements of Facts supporting the original motion do not adequately address all of the issues presented in the supplemental briefings. Therefore, the Court limits this decision to resolve the one issue presented in Plaintiff's Partial Motion for Summary Judgment. Any supplemental pleadings, while read, are not to the Court's satisfaction based on uncontested and material issues of fact.

- 2 -

there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

**II. Defendant's Reporting Requirements Under EPCRA**

The Emergency Planning and Community Right-to-Know Act ("EPCRA") maintains "a framework of state, regional, and local agencies designed to inform the public about the presence of hazardous and toxic chemicals, and provide for emergency response in the event of health-threatening release[s]." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 86 (1998); 42 U.S.C. §§ 11001–11050. The EPCRA requires facilities to immediately report the release of a hazardous substance. The EPCRA "is intended to encourage and support emergency planning efforts at the State and local levels and provide the public and local governments with information concerning potential chemical hazards present in their communities." *Id. See also United States v. Gibson Wine Co.*, 2017 WL 1064658 at \*10 (E.D. Cal. Mar. 20, 2017).

More specifically, the EPCRA requires entities to report any large-scale release of certain hazardous chemicals to the state emergency response commission ("SERC") and the local emergency planning commission ("LEPC"). 42 U.S.C. § 11004. Any facility that produces, uses, or stores a hazardous chemical and releases a reportable quantity must comply with emergency release notification requirements. 40 C.F.R. § 355.30. Ammonia is an extremely hazardous substance, and facilities must report daily emissions of ammonia in excess of one hundred pounds. 40 C.F.R. § 302.4; 40 C.F.R. Part 35, Appendix A. Any person may commence a lawsuit against an owner or operator for

failure to submit a follow-up emergency notice. 42 U.S.C. § 11046(a)(1)(A)(i).

Nevertheless, pursuant to the terms of the EPCRA, the reporting obligation does not apply to releases that result "in exposure to persons solely within the site or sites on which a facility is located." 42 U.S.C. § 11004(a)(4). This exception is in line with EPCRA's focus on public notification of potential public risks. If a facility maintains an emission within its boundaries, the emission does not present an immediate risk to the surrounding community, and there is no need for notice. Relatedly, the EPA considered commentary on whether this exception means that the EPCRA requires "actual exposure to persons off-site in order to be subject to release reporting requirements." 52 Fed. Reg. 13378, 13380–81 (Apr. 22, 1987). The EPA final rule nearly mirrors the statute and states that a facility need not report any release that results "in exposure to persons solely within the boundaries of [the] facility." 40 C.F.R. § 355.31. To trigger the reporting requirement under EPCRA, the release of the hazardous chemical must elicit the need to either "inform the public about the presence of hazardous and toxic chemicals," or "provide for [an] emergency response." *Steel Co.*, 523 U.S. at 86.

Hickman's provides some evidence that air samples taken at both facilities consistently show no emissions of ammonia at the property boundaries. (Doc. 62 at 3). Hickman's puts forth facts that "[a]ir quality samples collected by Hickman's Tonopah and Arlington facilities and submitted to the applicable regulatory agencies have consistently indicated there are no emissions of ammonia at the property boundaries." (Doc. 31 at 4, ¶1). Hickman's substantiates this claim with Robert Phalen's declaration that he conducted monthly ammonia testing at the boundaries of the facilities, and this testing registered minimal levels of ammonia. (Doc. 31 at 5–6). Hickman's also provided copies of these reports. (Doc. 31, Exh. A). Hickman's thus alleges that there are issues of fact as to whether it has a reporting obligation under the EPCRA because of its evidence that the only persons exposed to the ammonia coming from the chicken fertilizer are "persons solely within the site or sites on which" their facilities are located. 42 U.S.C. § 11004(a)(4). Although Plaintiff DWA challenges the validity of Hickman's

report of minimal ammonia at the facilities' boundaries, (Doc. 64 at 6; Doc. 64, Exh. 8), Hickman's presents sufficient evidence to raise a material issue of fact.

**CONCLUSION**

For the reasons stated above, Defendant Hickman's Egg Ranch Inc. has shown that there is a genuine issue of fact concerning Plaintiff's partial motion for summary judgment.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 60) is **DENIED**.

Dated this 14th day of March, 2018.

_____
Honorable G. Murray Snow
United States District Judge